# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 5042 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff William Gonzalez's ("Plaintiff") claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's Memorandum in Support of Motion for Summary Judgment, which this Court will construe as a motion for summary judgment, [Doc. No. 15], is denied and the Commissioner's cross-motion for summary judgment is granted.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. Procedural History

Plaintiff filed an application for DIB on June 18, 2012, alleging a disability onset date of May 30, 2006, due to low back pain, spinal fusion, depression, anxiety, high blood pressure, and difficulties walking, standing, lifting, carrying, and focusing. (R. 144–46, 194.) His application was denied initially on October 19, 2012, and again upon reconsideration on April 11, 2013. (R. 69–94.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on June 1, 2013. (R. 107.) The hearing was held on July 14, 2014. (R. 37–68.) Plaintiff appeared at the hearing represented by an attorney and offered testimony. (*Id.*) A vocational expert also appeared and offered testimony. (*Id.*) On August 28, 2014, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (R. 14–36.) The Appeals Council ("AC") denied review on March 3, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–6.)

## II. The ALJ Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity between May 30, 2006, his alleged onset date, and September 30, 2013, his date last insured. (R. 19.) At step two, the ALJ concluded that Plaintiff has severe impairment of disorders of the back (status post fusion surgery, L5-S1

spondylosis).[2] (*Id.*) At step three, the ALJ concluded that Plaintiff's impairments, alone or in combination, do not meet or medically equal a Listing. (R. 21.) The ALJ then determined that Plaintiff retains the residual functional capacity ("RFC") to perform work at the sedentary exertional level, but that he needs a cane to ambulate if walking over fifty feet, cannot climb ladders or scaffolds, but can occasionally climb stairs or ramps, stoop, kneel, crouch, and crawl. (*Id.*) Additionally, the ALJ found that Plaintiff can balance frequently, has no manipulative or environmental limitations, and is able to perform simple, routine tasks and follow simple instructions. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his past relevant work. (R. 31). At step five, based upon the testimony of a vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Act. (R. 31–32.)

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ

---

[2] Medical evidence regarding Plaintiff's physical impairments has been omitted from this opinion.

considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

4

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, or resolving conflicts in evidence. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions ... and must adequately articulate his analysis so that we can follow his reasoning...."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors

his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Plaintiff asserts that this Court should remand the ALJ's decision because she: (1) failed to properly assess his impairments under Listing 1.04; (2) did not account for his non-exertional limitations when formulating her RFC; (3) erred in her evaluation of Plaintiff's subjective symptom allegations; and (4) failed to include all of Plaintiff's limitations in the hypothetical questions she posed to the vocational expert at Plaintiff's evidentiary hearing. The Court is not persuaded by these arguments.

### A. Listing 1.04

To begin, Plaintiff asserts that the ALJ erred at step three when she determined that he did not have an impairment that meets or equals a listing.

At step three, an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. 20 C.F.R. § 404.1520(a)(4)(iii). An ALJ should identify the listing by name and offer more than a perfunctory discussion. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Although an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing. *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 107

6

L.Ed.2d 967 (1990); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Here, Plaintiff has failed to meet that burden.

Listing 1.04 requires a disorder of the spine resulting in a compromise of a nerve root or the spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (A).

While Plaintiff does not identify any evidence which explicitly reveals that he suffers from nerve root compression, he theorizes that the ALJ should have still reached that conclusion based on specific findings in his record. [Doc. No. 15, at 11–12]. The problem with Plaintiff's assertion is that the state agency consultants, Dr. Charles Wabner, M.D., and Dr. Young-Ja Kim, M.D., each had access to the evidence he emphasizes, including a marked range of motion deficits, positive straight leg testing, and gait difficulties, but nevertheless determined that he did not meet or equal any particular listing. (R. 69–93.) Plaintiff's different reading of the evidence rests upon his own effort to impermissibly 'play doctor' and substitute his lay opinion about the medical evidence for the expert opinions provided by the physicians. *Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011) (stating a claimant's counsel must not play doctor). Because Plaintiff has failed to establish

7

that he satisfies all the criteria of a listing, the Court will not remand based on the ALJ's step three determination.[3]

The Court's finding at this stage is strengthened by the fact that the ALJ's step three determination was supported by substantial evidence. Within her discussion, the ALJ stated that she had "given particular consideration to [Plaintiff's] impairments" under Listing 1.04, but ultimately concluded that his back disorders did not satisfy its requirements. She further explained that "no acceptable medical source ha[d] mentioned findings equivalent in severity to the criteria of any listed impairment" and "[n]o state agency reviewer, consultant, or examiner ha[d] concluded that [Plaintiff] ha[d] an impairment(s) severe enough to meet or equal a listing." (R. 21.) Plaintiff claims this reasoning "failed to analyze [his] condition in accordance with the listing in a meaningful way" and therefore cannot serve as substantial evidence to support the ALJ's conclusions. [Doc. No. 15, at 11]. To the contrary, and as Defendant points out, no remandable error occurs where, as here, an ALJ relies on the findings of state agency consultants, who separately review the claimant's evidence of record and conclude that he did not meet the requirements of any listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (stating an ALJ may properly rely upon the opinions of the non-examining, state agency consultants to determine whether a claimant meets or equals a listing); *Filus v. Astrue*, 694 F.3d

---

[3] A portion of Plaintiff's argument under step three relies on *Minnick v. Colvin*, 775 F.3d 929 (7th Cir. 2015). In *Minnick*, the ALJ provided a "perfunctory analysis" as to why the claimant did not meet Listing 1.04, while ignoring evidence which revealed mass effect on two nerve roots, motor and reflex loss, and a positive straight leg test. *Id.* at 935–36. Notably absent from the record in *Minnick* was an expert opinion regarding medical equivalency. Based on this distinction, the Court finds that *Minnick* is not instructive in this case.

863, 867 (7th Cir. 2012) (noting that an ALJ is not required to articulate her reasons for accepting the opinions of the state agency consultants that a claimant does not meet or equal any listing when those opinions are not contradicted); *see also Knox v. Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009) (Finding the claimant had not meet his burden to present medical findings that matched or equaled the requirements of a listing, in part because "two state-agency physicians concluded that [the claimant's] impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary"). Accordingly, the Court finds that the ALJ's step three finding is not grounds for remand in this case.

**B. The ALJ's RFC Failed to Account for all of Plaintiff's Impairments**

Next, Plaintiff argues that the ALJ failed to assess his depression and medication when formulating her RFC.[4]

A claimant's RFC "is the most [he] can still do despite [his] limitations. *See* 20 C.F.R. § 404.1545(a)(1). When formulating a claimant's RFC, an ALJ must incorporate all of a claimant's limitations which she finds are supported by the record, *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014), "even those that are non-severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all

---

[4] At step two, the ALJ found that Plaintiff's depression caused mild limitation in his activities of daily living, social functioning, and concentration, persistence, or pace. Defendant spends a significant portion of her brief defending the ALJ's findings at this stage, arguing that her step two determination was supported by substantial evidence. Defendant's argument, while correct, misses the mark. Plaintiff is not arguing that the ALJ's step two finding was improper, but rather that despite her step two determinations, the ALJ failed to account for Plaintiff's mental limitations when formulating her RFC. *See* 20 C.F.R. § 404.1523.

9

relevant evidence in your case record."); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ( "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."). Remand is warranted if an ALJ fails to fully consider the impact of a claimant's non-severe impairments. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Plaintiff's depression is documented at several places in his record, particularly in the opinion of Dr. Ana Gil, M.D., S.C., who diagnosed him with moderately severe depressive disorder. While Dr. Gil did report that Plaintiff suffered from feelings of helplessness and hopelessness, had grown socially isolated, and struggled with cognitive tasks such as his serial 7s, she did not express that his mental restrictions would result in any work-related functional limitations. (R. 360–364). Plaintiff's treating physician, Dr. Marilyn Aden, M.D., similarly reported that Plaintiff had "little interest or pleasure in doing things" however, like Dr. Gil, she did not articulate any functional limitations which would arise as a result of Plaintiff's mental conditions. (R. 249.) Plaintiff claims it was improper for the ALJ to accord significant weight to the findings of Dr. Gil and Dr. Aden without also including corresponding mental functional limitations based on their opinions in her RFC determination.

As was the case with Plaintiff's previously discussed step three argument, however, Plaintiff asks the Court to remand the ALJ's decision based on his own lay reading of the evidence, not the findings of the physicians of record. Neither Dr. Gil

nor Dr. Aden, or any other examining or reviewing physician, opined that Plaintiff's documented depression would result in any work related limitations. Once again, Plaintiff cannot substitute his lay reading of the medical evidence for the findings of his physicians. *Lewis v. Colvin*, No. 14-cv-50195, 2016 WL 4530338, at *11, n. 3 (N.D. Ill. Aug. 30, 2016) (ALJs, as well as counsel and the courts, must refrain from playing doctor). Despite the dearth of depression-related limitations from Plaintiff's medical sources, in her RFC determination, the ALJ limited Plaintiff to "simple, routine tasks" and explained that he could follow "simple instructions." Plaintiff's argument fails to explain how he was prejudiced by this RFC, in light of the fact that it is *more* restrictive than the RFCs provided by his physicians. Accordingly, the Court finds that the ALJ adequately accounted for his mental limitations when formulating her RFC.

Plaintiff also claims the ALJ failed to assess the impact that the side effects of his medications—drowsiness and difficulty concentrating—would have on his ability to work. *See Flores v. Massanari*, 19 Fed.Appx. 393, 399 (7th Cir.2001) ("The side effects of medication can significantly affect an individual's ability to work and therefore should figure in the disability determination process.") Not only did the ALJ explicitly state in her opinion that Plaintiff's medicine caused sleepiness, drowsiness, dizziness, and difficultly focusing and concentrating, (R. 22), she also addressed those symptoms on her RFC by limiting Plaintiff to simple, routine tasks as well as following simple instructions. (R. 29). Based on these findings, Plaintiff's

argument that the ALJ failed to consider the side effects of his medication is a non-starter.

**C. Credibility**

Third, Plaintiff alleges that the ALJ failed to adequately asses his subjective symptom allegations.[5] An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue,* 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535,

---

[5] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on March 25, 2014. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

539–40 (7th Cir. 2003) (quoting *Zurawski,* 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart,* 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck,* 357 F.3d at 703; *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

First, Plaintiff asserts that the ALJ's credibility determination should be remanded because her discussion contains "boilerplate" language which has been frequently criticized by the courts. Here, the ALJ began her analysis of Plaintiff's testimony by stating:

> After careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible for the reasons explained in this decision.

(R. 23.) While Plaintiff is correct that courts have consistently criticized boilerplate language such as this which "fails to inform [the court] in a meaningful, reviewable way of the specific evidence the ALJ considered" when making her determination, the use of boilerplate language alone does not necessitate remand. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). In fact, the inclusion of boilerplate

13

language may be harmless so long as the ALJ has otherwise adequately explained the reasons for her credibility determination. *Filus*, 694 F.3d at 868.

Immediately following her boilerplate paragraph, the ALJ launched into a lengthy discussion as to why Plaintiff's testimony was not credible. First, she summarized Plaintiff's medical records which revealed, among other things, that none of Plaintiff's credible medical sources thought he was too disabled to work. Second, she recounted portions of Plaintiff's Function Report where he described his daily activities (eating breakfast, watching television, and reading, but not performing chores or preparing meals) and the side effects of his medication (sleepiness, drowsiness, dizziness, and trouble focusing). (R. 22). Next, she described part Plaintiff's testimony where he stated that his is unable to work due to his pain. (R. 23). Only after her articulation of this evidence did the ALJ conclude that "claimant's medical treatment records, the level and response to treatment, the findings and opinions of physicians and medical consultants, and the observation and testimony received by [her] at the hearing" support her ultimate conclusions. (R. 30.) Even Plaintiff himself admits that the ALJ "provided some explanation in support of [her] boilerplate language", but argues that it did not constitute substantial evidence. To the contrary, the ALJ here provided us with several other pieces of evidence beyond her boilerplate language which allowed us to sufficiently review her credibility conclusion.

Second, Plaintiff complains the ALJ "impermissibly rejected his claims solely due to a purported lack of objective medical support." [Doc. No. 15 at 14]. But, as

14

the Court has already pointed out, the ALJ based her decision on several other factors including his activities of daily living, hearing testimony, and the findings of Plaintiff's doctors. The Court does not require an ALJ's credibility determination to be "flawless." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). Rather, only when the determination "lacks[s] in explanation or support" will we deem it "patently wrong." *Simila*, 573 F.3d at 517. Based on the foregoing, the Court will not disrupt the ALJ's credibility determination in this case.

**D. Hypotheticals to the VE**

Finally, Plaintiff claims that the hypothetical questions the ALJ posed to the vocational expert ("VE') failed to account for his alleged non-exertional limitations in concentration, persistence, or pace, and relatedly, the side effects of his medications. [Doc. No. 16, 17–18]. At the evidentiary hearing, the ALJ posed a series of increasingly restrictive questions to the VE about what jobs would be available to a hypothetical individual with the same vocational profile as Plaintiff, who was, among other things, limited to "simple, repetitive tasks due to pain and concentration." (R. 62–64.) The VE opined that such an individual would be able to perform work as an order clerk, charge account clerk, or document preparer. (R. 63–64.)

In making his argument, Plaintiff relies on *O'Connor-Spinner v. Astrue*, where the Seventh Circuit held that, "[i]n most cases, [ ] employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration,

15

persistence and pace." 627 F.3d 614 (7th Cir. 2010). In *O'Connor-Spinner*, the ALJ's hypothetical to the VE did not include specific limitations for concentration, persistence, or pace, and instead only limited the plaintiff to "routine, repetitive tasks" with simple instructions. In remanding the case, the Seventh Circuit stated that an ALJ's hypothetical must "orient the VE to the totality of a claimant's limitations." *Id*. at 618–19. Importantly, the Seventh Circuit stated that in "most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations." *Id*. at 620–21. Plaintiff's case is distinguishable from this set of facts.

Unlike the ALJ in *O'Connor-Spinner*, the ALJ here specifically articulated that Plaintiff's restriction to "simple, repetitive tasks" was due to his "pain and concentration." Therefore, Plaintiff's reliance on the case is misplaced. Accordingly, the Court finds that the ALJ did not commit reversible error at this step.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted. Affirmed.

**SO ORDERED.**  **ENTERED:**

**DATE:      March 1, 2018**      _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**